IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:18CV128 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $11,022.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3. The defendant property is $11,022.00 in U.S. Currency, which was seized on August 15, 2017, in Greensboro, North Carolina, and is currently in the custody of the United States Marshals Service.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 22nd day of February, 2018.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


/s/ Lynne P. Klauer
Lynne P. Klauer
Assistant United States Attorney
NCSB #13815
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336) 333-5351
Email: lynne.klauer@usdoj.gov

3

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

_____
Kevin Cornell
Task Force Officer
Drug Enforcement Administration

# DECLARATION

I, Kevin Cornell, Task Force Officer with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state, pursuant to 28 U.S.C. § 1746, under penalty and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a federal law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21, United States Code.

2. I have been a Task Force Officer with DEA since May 2005, and am currently assigned to the Greensboro Resident Office. I have been a sworn Deputy Sheriff with the Guilford County Sheriff's Office (GCSO) since July 1998. I have been a Detective with the Special Operations Division - Vice/Narcotics Unit (Vice Unit) since April 2004, and was promoted to the rank of Detective Sergeant with the Vice Unit in May 2012.

3. This declaration is submitted in support of a Verified Complaint of Forfeiture for $11,022.00 in U.S. currency seized on August 15, 2017.

4. As set forth herein, there is probable cause to believe that the $11,022.00 in U.S. currency is subject to seizure and forfeiture pursuant to Title 18, United States Code, Section 981, and Title 21, United States Code, Section 881.

5. In May of 2017, Detective R. Cole of the GCSO Vice Unit began an investigation of "BB" after obtaining information "BB" was involved in the sale of cocaine and "molly" [MDMA] in the Greensboro/Guilford County area.

GOVERNMENT EXHIBIT A

6. On August 15, 2017, Detective Cole obtained information from a Confidential and Reliable Source of Information (CRSI) who advised that "BB" was traveling with an unknown male to a location east of Guilford County in a white 2016 Honda Accord Sport, registered to "JC", bearing NC registration plate CBZ-1136, to sell a trafficking quantity of cocaine to an unknown individual. Upon receiving this information, Detective Cole and other officers positioned themselves along the I-85 corridor in an effort to locate the Honda Accord.

7. On August 15, 2017, at approximately 7:38p.m., GCSO Deputy J. Gordon was observing traffic in a GCSO marked patrol vehicle sitting stationary on I-85 south near Mt. Hope Church Road in Guilford County. Deputy Gordon observed a white Honda Accord traveling south on I-85 at a high rate of speed [79 mph in a 65 mph zone]. Deputy Gordon activated his emergency equipment and as he was attempting to overtake the vehicle, he observed the vehicle was still traveling at a high rate of speed and was swerving in and out of traffic without signaling. The vehicle finally pulled to the shoulder of the road on I-85 just west of the McConnell Road exit and Corporal M. C. Osborne pulled directly behind Deputy Gordon to assist with the traffic stop.

8. Upon approach to the vehicle, Deputy Gordon observed two (2) occupants inside the vehicle, the driver, identified as Antonio Dominic SEARCY, and the front seat passenger, identified as "BB". Neither SEARCY nor "BB" were able to provide a driver's license. As Deputy Gordon spoke with the subjects, he smelled a strong odor of raw marijuana emanating from the vehicle's interior.

2

9. Deputy Gordon returned to his patrol vehicle, and after running a routine check of SEARCY's information it was determined he had an outstanding warrant for arrest for Failure to Appear and a suspended North Carolina driver`s license. Deputy Gordon re-approached the vehicle and placed SEARCY under arrest for the outstanding warrant. Deputy Gordon could still smell the odor of raw marijuana coming from the vehicle and SEARCY's person. Deputy Gordon located a large amount of U.S. currency in SEARCY's front pockets of his jeans, later determined to total $11,022.00. Sergeant R. Hughes removed "BB" from the vehicle and a large amount of U.S. currency was located in his pockets, later determined to total $3,306.00.

10. Cpl. Osborne conducted a probable cause search of the vehicle and located a large amount of U.S. currency inside a book bag on the rear floorboard of the driver's side, which was later determined to total $22,000.00 in U.S. currency. Further search of the vehicle revealed marijuana residue next to the gearshift and on the dashboard next to the steering wheel, but no significant quantities of narcotics were found.

11. Detective Cole and Detective King from the GCSO Vice/Narcotics Unit responded to the scene and conducted interviews with "BB" and SEARCY separately regarding the U.S. currency. Both subjects independently advised the large sum of U.S. currency discovered inside the vehicle and on their person was money they "earned through the entertainment industry" as "professional rappers". "BB" made the statement "we just rap, hangout, and smoke weed". SEARCY advised he possessed "around $11,500.00" in his pockets, and "BB" replied he possessed "around $2,000.00" in his pockets. "BB" stated the book bag of U.S. currency located on the driver's side rear floorboard belonged

3

exclusively to him and contained around $20,000.00 in U.S. currency. When questioned about the same book bag of U.S. currency, SEARCY stated the book bag located on the driver's side rear floorboard belonged to both he and "BB" together, stating there was "probably around $20,000.00 to $25,000.00 in the book bag". SEARCY voluntarily stated, "I knew it was over, cause I was speeding, I know I was." Both individuals stated they were coming from Raleigh, after seeing a "friend" although neither subject could provide the name of the individual or an exact location of where they met their "friend". Neither "BB" nor SEARCY ever provided an explanation to officers as to why they had the U.S. currency with them in the vehicle.

12. SEARCY was arrested for the outstanding order for arrest and charged on citation for Driving While License Revoked and speeding. The $3,306.00 in U.S. currency located in "BB's" pockets/possession was seized by officers to be applied to an outstanding Controlled Substance Tax assessment through the NC Department of Revenue related to a previous incident in which quantities of controlled substances were seized from "BB".

13. Immediately following the conclusion of the traffic stop, Detective Cole and Corporal Osborne responded to the Special Operations Division (SOD) office, to conduct a canine sniff of the aforementioned amounts of U.S. currency seized. The U.S. currency was transported to the SOD office and hidden in different locations within the building. Corporal Osborne then deployed his narcotics detection canine, Canine Bach, to conduct an open area search of the different areas and a positive alert to the odor of narcotics was observed on the locations of the $11,022.00 in U.S. currency and $22,000.00 in U.S. currency.

4

Case 1:18-cv-00128   Document 1-1   Filed 02/22/18   Page 4 of 7

14. In October 2012, the Guilford County Sheriff's Office purchased Canine Bach from Shallow Creek Kennels in Sharpsville, PA. Canine Bach is a male Belgian Malinois, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances.

15. In December, 2012, Corporal Osborne and Canine Bach attended Basic Canine Handler School (240 hours) at the Guilford County Sheriff's Office Canine Facility under the direct supervision of GCSO senior canine handlers Master Corporal E. Stanley and Corporal D. Thompson. During this training, Canine Bach proved that he could reliably use his olfactory senses to locate narcotic training aids of actual controlled substances which include Heroin, Cocaine (HCl and Base), Marijuana / Hashish, and Methamphetamines. After successful completion of this initial training, Canine Bach was entered into service with the Guilford County Sheriff's Office – Special Operations Division as a narcotics detection canine.

16. Corporal Osborne and Canine Bach were originally certified as a Narcotics Detection Team by the North American Police Working Dog Association in the detection of Marijuana, Cocaine, Heroin, and Methamphetamines on September 17, 2013. Corporal Osborne and Canine Bach were re-certified by the North American Police Working Dog Association on September 13, 2017. This certification is valid for one year from the date of issuance. Additionally, Corporal Osborne and Canine Bach are certified as a handler team by the North American Police Work Dog Association in the fields of Obedience, Aggression, Tracking, Article and Area Searching.

17. Canine Bach is trained to "Passively Alert" after detecting the odor of narcotics for which he has been trained. This alert consists of a physical reaction, which ultimately ends in Canine Bach coming to a sitting position when the odor of narcotics for which he is trained is detected and staring at the source of the narcotic odor. Canine Bach also exhibits various mental and physical reactions, which are noticeable to Corporal Osborne, which include changes in his behavior such as becoming possessive of the area, a refusal to leave an area where the odor of narcotics are detected and changes in her breathing rate and sniffing patterns.

18. Canine Bach undergoes frequent training for the detection of concealed controlled substances, which is on-going in order to ensure his proficiency. Corporal Osborne also frequently consults various periodicals to stay informed of current trends utilized by narcotics traffickers. Corporal Osborne has successfully demonstrated the ability to properly deploy and maintain a police narcotics canine and effectively locate controlled substances with the assistance of Canine Bach that have been concealed in a variety of locations. Corporal Osborne and Canine Bach have assisted various local and federal law enforcement officers in numerous narcotics investigations.

19. On September 15, 2017, DEA seized the U.S. currency pursuant to warrant issued by U.S. Magistrate Judge Joe L. Webster (1:17MJ317), for the $33,022.00.

20. DEA thereafter began administrative forfeiture proceedings. On November 27, 2017, DEA received a claim to $11,022.00 of the defendant currency from

SEARCY. The administrative forfeiture process was terminated and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

21. The $11,022.00 in U.S. currency is currently in the custody of the United States Marshal's Service.

22. The remaining $22,000.00 in U.S. currency was administratively forfeited.

## CONCLUSION

23. Based on the foregoing, I maintain there is probable cause to believe that the $11,022.00 in U.S. currency, was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., or represents proceeds traceable to such an exchange, and is therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

This the 22nd day of February, 2018.

*[signature]*
Kevin Cornell
Task Force Officer
Drug Enforcement Administration